UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No.

KATHLEEN M. AMARAL on behalf of
herself and all others similarly situated,

    Plaintiff,

vs.

U. S. SECURITY ASSOCIATES, INC.,
a/k/a and d/b/a USSA,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Kathleen M. Amaral ("Ms. Amaral" or "Plaintiff") on her own behalf and on behalf of all those similarly situated, sues Defendant, U.S. Security Associates, Inc. a/k/a and d/b/a USSA ("USSA" or "Defendant"), a Florida Profit Corporation, (Ms. Amaral and USSA are hereinafter referred to as the "Parties") and states:

## GENERAL ALLEGATIONS

1. This is an action for declaratory judgment, to recover monetary damages in the form of unpaid overtime compensation, as well as an additional amount as liquidated damages, to redress the deprivation of rights secured to Plaintiff and other employees similarly situated by the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA") and for an award of attorneys' and paralegal fees and costs.

## JURISDICTION

2. This Court has subject jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), under the FLSA.

3. At all times material hereto, Ms. Amaral was an employee of USSA in the State of Florida.

4. At all times material, although Defendant misclassified Plaintiff as being exempt from overtime, Plaintiff was actually a non-exempt employee of USSA and entitled to be paid overtime.

5. USSA is one of the nation's largest providers of a range of security services including, but not limited to, security guards, with several divisional headquarters in various parts of Florida (among other states) and which conducts business throughout Florida with and for approximately 2,000 clients in Florida alone, including government contracts.

6. USSA does business in Orange County, Florida and has a branch office located there.

7. At all times material, USSA operated as a business organization which sells and/or markets its services and/or goods to customers from throughout the United States and elsewhere and also provides its services for goods sold and transported from across state lines of other states, and USSA obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses electronic, digital and telephonic transmissions going over state lines to do its business, transmits funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees. As such, USSA owned and operated a business engaged in commerce or in the production of goods for commerce as defined in §3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and 203(s).

8. Upon information and belief, at all times material hereto, USSA's annual gross revenue exceeded $500,000 per annum.

9. Defendant is subject to the personal jurisdiction of this Court because it operates, conducts, engages in, and/or carries on business in the Middle District of Florida.

10. Defendant is also subject to the personal jurisdiction of this Court because it engages in substantial and not isolated activity within the Middle District of Florida.

## VENUE

11. This Court is the appropriate venue based upon the following:

   (a) The unlawful employment practices alleged herein occurred and/or were committed in Orange County, Florida, where USSA is located and conducts business;

   (b) The acts complained of and the causes of action sued upon occurred in Orange County, Florida; and

## PARTIES

12. Plaintiff, a former employee of USSA, was and continues to be a resident of Orange County, Florida.

13. In April 1994, Plaintiff began her employment with USSA as a Site Manager.

14. Within months, Plaintiff was named an Administrative Assistant.

15. Although she was not exempt, she was paid improperly on a salary basis and not paid overtime for work performed over 40 hours per week.

16. In or around 2010, there was a period for about a year or so when Plaintiff was actually paid overtime when she worked more than 40 hours per week, in recognition that Plaintiff was non-exempt and entitled to be paid overtime AND in recognition that Plaintiff's workweek was a 40-hour workweek.

17. Her supervisor, Hank Hiday put a stop to that practice, and it is believed that he did so around the time Defendant merely changed Plaintiff's title to that of "office manager," even though her duties did not change and her approximate total pay stayed about the same or was diminished.

18. It appears that Defendant gave her a new title and re-classified her (incorrectly) to exempt status so they could (improperly) stop paying Plaintiff overtime and get her to work longer hours and take on more non-exempt duties without having to pay for it.

19. USSA stopped paying Plaintiff overtime for any hours she worked in excess of forty (40).

20. When she was paid overtime, Defendant took what had been her salary and divided it by 2,080 hours (i.e., 40 hours per week times 52 weeks or 2,080) to arrive at a regular rate and the overtime rate Defendant used was 1.5 times that regular rate, all based on a 40 hour work week.

21. Plaintiff remained the Office Manager (in title only) until June 2018, when she was summarily terminated.

22. Plaintiff was summarily terminated in June 2018 without cause and was told it was because of USSA's reorganization in connection with its impending sale.  It is believed that Plaintiff was fired because Defendant wanted to sell the company or an interest in the company and wanted to reduce its labor expense. Other employees were let go similarly. It is unknown at this time whether Defendant has informed its buyer.

23. Plaintiff received compensation in the same amount, $1,428.80, in each of her bi-weekly paychecks.

24. At the time Plaintiff was terminated, she was paid a salary, which, if divided by 2,080 hours would be about $17.86 per hour.

25. Although Defendant misclassified Plaintiff as being exempt from overtime, Plaintiff was actually a non-exempt employee of USSA and entitled to be paid overtime.

26. Plaintiff's duties included doing whatever task the Defendant instructed her to perform, which varied depending upon the position at the time, but all positions involved her communicating with members of management as to how they wanted to handle certain situations.

27. Plaintiff did not have the ability to hire or fire anyone (nor did she hire or fire anyone), and she did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

28. Plaintiff was only given tasks that were designed to facilitate production of work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve her exercising independent judgment and discretion on matters of significance.

29. Plaintiff's duties were not managerial.

30. Plaintiff did not have any authority to interview, select, and/or train employees. Plaintiff did not have any authority to set and adjust the rates of pay and hours of work for any employees. Plaintiff had no authority to direct the work of employees. Plaintiff did not maintain production or sales records at all when she worked for the Defendant, nor did she use any such records to supervise or control any employee. In fact, Plaintiff does not even know anything about the business's financing or financial success or failure. It was not her responsibility. Plaintiff knows nothing about the sales numbers or figures, as that was not her responsibility, but rather the responsibility of someone else in higher management. Plaintiff did not supervise any staff. Plaintiff had absolutely no say concerning any of the costs. For example, concerning wages paid to employees, Plaintiff had no say concerning what any particular employee would be paid, how many employees could work in the offices, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendant . Plaintiff had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills. Plaintiff never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

31. While Plaintiff worked for the Defendant, she never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. While Plaintiff worked for the Defendant, she never handled employee complaints and grievances, as that was for the Defendant to do. In addition, Plaintiff never disciplined employees, nor did she have the power or authority to do that. Plaintiff did not plan any work for any employee, as there was no work to plan. Plaintiff never determined any techniques to be

5

used by employees to do their job, as she could not tell another employee what responsibilities to take on. Plaintiff was not allowed to apportion work among any employees, as there were no employees who reported to her to whom she could apportion work. Plaintiff never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendant or the employees themselves decided all of that. Plaintiff had no involvement in controlling the flow and distribution of materials or merchandise and supplies. Plaintiff had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Plaintiff had no involvement with respect to budgeting. Plaintiff was not involved in reviewing any sort of financial documents or statements of the business operations, and she did not review any such documents, nor was Plaintiff supposed to. Plaintiff had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that Plaintiff had anything to do with in terms of deciding how they would be handled or dealt with while she worked for Defendant, nor did she have anything to do with paperwork concerning new employees or hires. Plaintiff simply followed the well-established techniques and procedures with respect to her duties, all of which were repetitive, routine, and recurrent work.

     32.    Plaintiff did not do anything that could have resulted in financial losses for the Defendant. Plaintiff did not perform work that was directly related to management or general business operations of Defendant or their customers, because Plaintiff did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (data process to keep books and other manual tasks). Plaintiff also did not perform work directly related to the management or general business operations of the Defendant because Plaintiff did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and

database administration; legal and regulatory compliance; and similar activities. Rather, Plaintiff was one more person looking to perform production work the Defendant relied on so heavily.

33. Plaintiff worked Monday through Friday, 10-12 hours per day (50-60 hours per week), performing non-exempt office duties.

34. In addition, on Saturdays, (until Michael Dalton took over the responsibility), Plaintiff also did inspections in the field and worked job sites. Plaintiff always informed her Branch Manager when she was working in the field. Often this Saturday work was for 8-12 hours.

35. Usually on the weekends, but sometimes during the week, Plaintiff also performed the following duties:

    a) maintained all of the fleet vehicles which required Plaintiff to have them serviced (i.e. oil changes, repairs, etc.) on the weekends; and

    b) delivered Branch vehicles to replace on site vehicles whenever they would break down.

36. These extra weekend duties added an additional 8 to 16 hours of work to Plaintiff's schedule every week.

37. Therefore, overall, Plaintiff estimates that she worked approximately between 58-76 hours each week.

38. Defendant did not pay Plaintiff overtime even though she was non-exempt and worked more than 40 hours per week in most, if not all, of the weeks she worked for Defendant.

39. Defendant knowingly and willfully failed to pay Plaintiff and other employees similarly situated their lawfully earned wages and overtime compensation in conformance with the FLSA.

40. The Plaintiff and others similarly situated to her were workers who worked at USSA with the title of Office Manager, who were misclassified as exempt employees, and were

not paid overtime for hours they worked over 40 hours in one or more weeks over the past three years or longer.

41. Defendant, exercising reasonable diligence, would have gained knowledge that Plaintiff and its employees were not being compensated at the rate of one and a half times the regular rate for those hours that were worked in excess of forty (40) per week, as required by the FLSA. Defendant knew the amount of time Plaintiff spent performing work or, with the exercise of reasonable care, could have and should have known of the existence of all of the time worked by Plaintiff.

42. Defendant has been sued previously for overtime violations and, therefore, knew or should have known it was in violation of the FLSA, sufficiently to warrant the extension of the applicable statute of limitations from two to three years.

43. Furthermore, the poster employers are required to post to inform employees of their rights under the FLSA was not posted and/or kept current and, therefore the applicable statute of limitation should be equitably tolled. See, e.g.,*Cruz v. Maypa*, 773 F.3d 138, 147 (4th Cir. 2014) (extending failure-to-post tolling in the ADEA context to the FLSA); Yu G. *Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) ("Failure to provide required notice of the governing legal requirements may be a sufficient basis for tolling."); *Kamens v. Summit Stainless, Inc*., 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations.").

44. Defendant has violated Title 29 U.S.C. §206 and/or §207 in that, among other reasons:

    (a) Plaintiff was not paid overtime to which she was entitled; and

    (b) Defendant has failed to maintain proper time records as mandated by the FLSA.

45. Other employees similarly situated to Plaintiff were not paid overtime they had earned.

46. Plaintiff has retained Schwarzberg & Associates, P.L. to represent her (and those who join in this collective action) and has agreed to pay the Firm reasonable attorneys' and paralegal fees for its services.

47. Plaintiff has fulfilled all conditions precedent to the filing of this lawsuit and/or such conditions have been waived.

### COUNT I
### UNPAID OVERTIME COMPENSATION – DECLARATION—
### VIOLATION of 29 U.S.C. § 207

48. Plaintiff realleges and reavers the General Allegations as if fully set forth herein.

49. During Plaintiff's employment with the Defendant, she worked hours in excess of forty (40) per week for which she was not compensated at the statutory rate of time and one-half.

50. Plaintiff was entitled to be paid at the rate of time and one-half for hours worked in excess of the maximum hours provided for in the FLSA.

51. Defendant failed to pay Plaintiff overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

52. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to her are in the possession and custody of the Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case to determine the amount due to her.

53. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by its failure to compensate Plaintiff at the statutory rate of time and one-half for the hours worked in excess of forty (40) hours per week when they knew or should have known such was due.

54. Defendant failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

55. Plaintiff has suffered damages in the amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages.

56. Plaintiff is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, Kathleen M. Amaral, respectfully requests that judgment be entered in her favor and for all others similarly situated who join in the action against the Defendant:

    a. Declaring that Defendant has violated the overtime provisions of 29 U.S.C. § 207;

    b. As to Plaintiff and others similarly situated:

        i. Awarding overtime compensation in the amounts to be calculated;

        ii. Awarding liquidated damages in the amounts calculated;

        iii. Declaring that the statute of limitations should be extended to three years and/or that the statute of limitation be tolled;

        iv. Awarding reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

        v. Awarding post-judgment interest; and

    c. Ordering any other and further relief this Court deems to be just and proper.

## COUNT II
## BREACH OF EMPLOYMENT AGREEMENT/UNPAID SEVERANCE

57. Plaintiff re-alleges the General Allegations as if fully set forth herein.

58. Plaintiff was required to sign an employment agreement, which included a provision for severance in the event Plaintiff was terminated.

59. While employed by USSA, Plaintiff was entitled to be paid a severance, in the event Defendant terminated Plaintiff without cause, based upon her employment agreement with USSA.

60. Not only was Plaintiff summarily terminated after twenty-four years of loyal dedicated service, but also USSA reneged on its promise to pay severance.

61. Plaintiff requested the severance due her on two different occasions, but was told by HR's, Sharon Guttman, that Plaintiff's employment agreement could not be located.

62. Curiously, all other Branch staff have been met with and either given a severance or a position with the company purchasing USSA.

63. To date, USSA has failed to pay Plaintiff any severance whatsoever.

64. Plaintiff is entitled to recover damages and her attorneys' fees under Fla.Stat. Section 448.08.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against USSA awarding her the amount of her severance in the amounts to be calculated, reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant; awarding pre- and post-judgment interest; and ordering any other and further relief this Court deems to be just and proper.

## COUNT III
## PROMISSORY ESTOPPEL

65. Plaintiff re-alleges the General Allegations as if fully set forth herein.

66. Defendant made numerous representations and promises (as promisor) of material facts to Plaintiff.

67. Defendant promised Plaintiff that she would be entitled to receive and would be paid severance in the event Defendant terminated her without cause.

68. Defendant terminated Plaintiff without cause.

69. Defendant should have reasonably expected to have induced action or forbearance on the part of Plaintiff.

70. Plaintiff forbore leaving employment with Defendant based, at least in part, on the promise of severance.

71. Defendant's misrepresentations induced such action by Plaintiff including, but not limited to, forbearing leaving the employ of the Defendant.

72. As a direct and proximate result, Plaintiff suffered a detriment and damages caused by reliance on Defendant's misrepresentations.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment against Defendant for damages, interest, court costs, and all such other and further relief as this Court deems just and proper.

### JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE FOR HERSELF AND ALL OTHERS SIMILARLY SITUATED.**

SCHWARZBERG & ASSOCIATES
*Attorneys for Plaintiff*
2751 South Dixie Highway, Suite 400
West Palm Beach, FL 33405
Telephone:   (561) 659-3300
Facsimile:   (561) 693-4540

By: /s/ **Steven L. Schwarzberg**
STEVEN L. SCHWARZBERG
Florida Bar No. 306134
steve@schwarzberglaw.com
mail@schwarzberglaw.com